Scott E. Davis
State Bar No. 016160
Scott E. Davis, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Amber Ragan*

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Amber Ragan,<br><br>       Plaintiff,<br><br>  v.<br><br>Life Insurance Company of North America, Toyota Motor Sales, USA, Inc., Group Long Term Disability Plan for Employees of Toyota Motor Sales, USA, Inc.,<br>       Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Amber Ragan (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

***Parties***

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Toyota Motor Services, USA, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Life Insurance Company of North America (hereinafter referred to as "LINA").  The specific LINA policy is known as group policy FLK0980012.   The Company's purpose in subscribing to the LINA policy was to provide disability insurance for its employees. Upon information and belief, the LINA policy may have been included in and part of the Group Long Term Disability Plan for Employees of Toyota Motor Sales, USA, Inc. (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.   At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to LINA.  Plaintiff believes that as it relates to her claim, LINA functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.      Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

1    benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also

2    liable for payment of those benefits. [1]

3    6.    The Company, Plan and LINA conduct business within Maricopa County and

4    all events giving rise to this Complaint occurred within Maricopa County.

5    *Venue*

6    7.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28

7    U.S.C. §1391.

8    *Nature of the Complaint*

9    8.    Incident to her employment, Plaintiff was a covered employee pursuant to

10   the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7).

11   Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to

12   §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits

13   she may be entitled to as a result of being found disabled.

14   9.    After working for the Company as a loyal employee, Plaintiff became

15   disabled on or about May 20, 2010 due to serious medical conditions and was unable to

16   work in her designated occupation as a Customer Service Representative.

17   10.   Following her disability, Plaintiff applied for and exhausted all short term

18   disability benefits (STD) under the relevant LINA STD policy.  Plaintiff then filed for long

19   term disability benefits under the relevant LINA Policy.  The relevant long term disability

20   policy provides the following definition of disability:

21

22   [1] "A plan administrator's dual role of both evaluating and paying benefits claims creates

23   the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also

24   exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to

25   administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

26

-3-

An Employee is Disabled if, because of Injury or Sickness;

1.  He or she is unable to perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.  After Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn 80% of his or her Indexed Covered Earning.

11.     In support of her claim for long term disability benefits, Plaintiff submitted to LINA medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant LINA policy.

12.     In support of her appeal, Plaintiff submitted to LINA a narrative letter dated December 16, 2010 from a treating board certified treating physician who opined that due her medical conditions and resulting symptoms and work limitations, Plaintiff had not been able to work in any occupation since May 20, 2010.

13.     In further support of her appeal, Plaintiff submitted to LINA a Functional Capacity Evaluation Report dated November 24, 2010 which determined after an evaluation of Plaintiff's serious medical conditions that "[her] tests indicate inability to perform tasks, even at the sedentary work level, due to her restrictions and limitations" (original emphasis).

14.     Further supporting her appeal, Plaintiff submitted to LINA a vocational report from a certified vocational expert dated February 1, 2011.   The vocational expert concluded, "I conclude that [she] is unable to work in any full-time capacity in the open competitive labor market...her need for unscheduled, frequent breaks prohibits [her] from working in the competitive labor market even in a sedentary job."

15.     In addition to the medical records and reports submitted to LINA, Plaintiff submitted a sworn affidavit from a family member who confirmed Plaintiff is unable to

work in any occupation and her condition has not improved in any way since her date of disability.

16.   As part of its review of Plaintiff's claim for long term disability benefits, LINA obtained a medical records only "paper review" from one of its own employees who allegedly worked as a Nurse Case Manager.  Plaintiff believes that due to the fact this individual was a LINA employee, they also had an incentive to protect their employment with LINA by providing paper reviews which selectively reviewed and/or ignored evidence that suggested disability as occurred in Plaintiff's claim in order to provide opinions and report(s) favorable to LINA and which supported the denial of her claim.

17.   In a letter dated March 2, 2012, LINA notified Plaintiff it had denied her claim for long term disability benefits under the LINA policy.  In the letter, LINA notified Plaintiff that she could file a civil action lawsuit in federal court pursuant to ERISA.

18.   During its review, LINA failed to adequately investigate Plaintiff's case and failed to engage Plaintiff and/or her treating physician in a dialogue with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  LINA's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

19.   Upon information and belief, LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the policy allowed for one, failing to engage Plaintiff in a dialogue so

she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

20.    In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [2]

21.    Plaintiff believes one reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its aforementioned conflicts of interest.  LINA's conflict of evidence is evident in the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits. Due to its conflict of interest, when LINA denied Plaintiff's disability claim it saved itself a significant sum of money.

22.    Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny her claim.

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

23.     With regard to whether Plaintiff meets the definition of disability set forth in the LINA policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion to LINA, its unlawful violations of ERISA committed during the review of Plaintiff's claim as referenced herein are so flagrant they justify *de novo* review.

24.     As a direct result of LINA's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

25.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

26.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that Plaintiff meets any definition of disability set forth in the LINA long term disability policy.  For an Order requiring Defendants to pay Plaintiff long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the LINA long term disability policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B.     For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

1    C.    For attorney's fees and costs incurred as a result of prosecuting this suit
2 pursuant to 29 U.S.C. §1132(g); and

3    D.    For such other and further relief as the Court deems just and proper.

DATED this 8th day of June, 2012.

SCOTT E. DAVIS. P.C.

By:    */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff